**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

YANG ENTERPRISES, INC.,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　Case No. 6:16-cv-612-Orl-37DAB

SPACE COAST LAUNCH SERVICES, LLC,

    Defendant.

## ORDER

This matter is before the Court on the following:

1. Defendant's Motion to Dismiss (Doc. 15), filed May 26, 2016;

2. Plaintiff, Yang Enterprises, Inc.'s, Memorandum of Law in Opposition to Defendant, Space Coast Launch Services, LLC's Motion to Dismiss (Doc. 16), filed June 9, 2016;

3. Defendant's Reply to Plaintiff's Response in Opposition to Motion to Dismiss (Doc. 22), filed June 24, 2016; and

4. Plaintiff, Yang Enterprises, Inc.'s, Sur-reply to Defendant's Reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Doc. 26), filed July 5, 2016.

For the reasons stated herein, Defendant's Motion to Dismiss is due to be granted in part and denied in part.

## BACKGROUND

This dispute arises from a contractual agreement between federal contractor Space Coast Launch Services, LLC (**"SCLS"**) and subcontractor, Yang Enterprises, Inc.

(**"YEI"**). The following allegations are taken from the Amended Complaint (Doc. 11) and its exhibits.

In 2005, the 45th Space Wing for the United States Department of the Air Force ("**USAF**") awarded SCLS with Launch Operations Support Contract, No. FA2521-05-C-0008 ("**Prime Contract**"). (Doc. 11, ¶ 7). Thereafter, SCLS and YEI entered into Subcontract No. 05-C-008-02 ("**Subcontract**"), which was "under and subject to the Prime Contract." (*Id.* ¶¶ 6, 7; Doc. 11, Ex B.) The Subcontract was to be governed by the substantive laws of the Commonwealth of Virginia, and its initial term, which included options to extend services, ran from May 2005 through September 2015 ("**Term**"). (Doc. 11, Ex. B, pp. 14, 29.)

According to the provisions of the Subcontract, SCLS was the prime contractor and was responsible for performing of all obligations under the Prime Contract. (*Id.* at 20–22.) YEI, as the subcontractor, was obligated to "provide qualified management and personnel" needed for launch operations support services to SCLS. (*Id.* at 32.) "Principal services include[d] logistics services, visitor control and operations training." (*Id.*) Additionally, YEI was required to "provide skilled personnel to operate the IT Help Desk in support of the SCLS Information Technology Director." (*Id.*) When directed by SCLS, YEI was also obligated to procure materials, supplies, and repair parts (*i.e.* Contractor Furnished Materials ("**CFM**")) detailed in the Subcontract's Performance Work Statement. (*Id.*)

The Subcontract was based on a "Cost Plus Award Fee" (**"CPAF"**), which generally "provide[d] for a fee consisting of a base amount fixed at contract inception and a[n] award fee amount that is paid based upon periodic subjective evaluations of

contractor performance." (Doc. 11, ¶ 10.) The Subcontract provided, in pertinent part, that:

> [d]uring the life of the [Prime] Contract, SCLS [would] provide YEI with subcontract opportunities (CFM purchases) sufficient to maintain an overall subcontract value equal to 12% of the total estimate cost of the projected contract funded value identified at award. This value may be increased as additional funding for projects is provided.

(*Id.*, Ex. B, p. 17 ("**Opportunities Provision**").)

The total estimate cost, base fee, and maximum fee award values for the Subcontract were set forth in an attachment to the Subcontract. (*Id.* at 51–53).) ("**Attachment 1**"). According to Attachment 1, the "estimated cost" for the Term of the Subcontract was $33,075,913, the "base fee" was $992,277, and the "award fee" was $1,653,796. (*Id.*). The total estimated cost and fees amounted to $35,751,986 over the Term of the Subcontract. (*Id.* at 53).

YEI claims that SCLS "ignored the requirements of Attachment 1 to the Subcontract and has failed or refused to provide YEI with the total value of the labor and CFM as set out in the Attachment 1." (Doc. 11 ¶ 13.) As a result, YEI allegedly sustained loss revenue in excess of $9 million and an additional shortfall of fees and general and administrative ("**G&A**") expenses in excess of $1 million. (*Id.* ¶ 14.) When YEI notified SCLS of these shortfalls, SCLS allegedly sought to reduce the amount of the shortfall by applying the total value it compensated YEI under a separate contract, which YEI has identified as the NRO Contract. (*Id.* ¶¶ 22, 23 (**"NRO Contract"**).) However, YEI contends that the NRO Contract is distinct from the Subcontract and payments under one should not be deducted from the other. (*Id.* ¶ 23.)

In September 2005, SCLS allegedly requested YEI to "provide a proposal for

Access Control Monitoring services for the National Reconnaissance Office, a federal agency that is not part of the USAF." (*Id.*) YEI sent, and SCLS, accepted YEI's proposal. (*Id.* ¶ 18.) Thereafter, SCLS and YEI entered into the NRO Contract, which was to be performed from October 1, 2005 through September 30, 2010. (*Id.* ¶ 17.) The NRO Contract, unlike the Subcontract, was based on a "Fixed Price Level of Effort Award Fee." (*Id.* ¶ 19.) YEI alleges that "[n]either the Subcontract nor the NRO Contract refer to the other, incorporate or adopt the terms of the other, or provide any language interlocking the two contracts." (*Id.* ¶ 20.) YEI adds that these contracts have "separate and distinct billing codes, separate annual budgets, and separated award fee scores." (*Id.* ¶ 21.) Nevertheless, SCLS allegedly claimed that the total value of the NRO Contract (approximately $2.1 million) "should be included in the compensation under the Subcontract and counted towards SCLS's obligation to provide YEI with 12% of the total estimated cost of the projected contract funded value identified at award." (*Id.* ¶¶ 22, 23.)

Based on the foregoing, YEI filed this action against SCLS and asserts three claims for relief: (1) breach of contract ("Count I"); (2) breach of implied covenant of good faith and fair dealing ("Count II"); and (3) declaratory judgment ("Count III"). (Doc. 11.) In response, SCLS has moved to dismiss all Counts for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Doc. 15.) The matter is fully briefed (*see* Docs. 16, 22, 26), and is therefore ripe for adjudication.

## STANDARD

The Federal Rules of Civil Procedure sets forth minimum pleading standards. Rule 8 requires that a complaint consist of simple, concise and direct allegations, and a short

4

and plain statement of the claims. Fed. R. Civ. P. 8(a)(2), (d)(1). When a complaint does not comply with minimum pleading requirements or otherwise "fails to state a claim to relief that is plausible on its face," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint states a plausible claim if it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Courts must resolve a Rule 12(b)(6) motion based solely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Further, courts must accept all well-pled factual allegations—but not legal conclusions—in the complaint as true. *See id.*

## DISCUSSION

**I.    Breach of Contract[1]**

In Count I, YEI asserts a claim for breach of contract based upon SCLS's alleged failure to pay the full amount due under the Subcontract. (*Id.* ¶¶ 26–30.) SCLS argues that YEI's breach of contract claim should be dismissed because: (1) YEI "does not establish a legally enforceable obligation of SCLS to … 'guaranty' subcontracting opportunities equal to 12% of the Subcontract's estimated value;" and (2) the total estimated cost and fees in the Subcontract were "subject to adjustment, based on government funding, which is exactly what happened." (*Id.*)

---

[1] The parties agree that Virginia law applies to the breach of contract claims, and the Court concurs. (Doc. 15 at 10; Doc. 16 at 2 n.2.)

5

Under Virginia law, to assert a claim for breach of contract claim a party must sufficiently allege: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612 (2004).

Here, YEI's allegations are fairly straightforward and simple. YEI and SCLS entered into the Subcontract in 2005. (Doc. 11 ¶¶ 6, 26.) Based upon the Opportunities Provision, SCLS was required "to provide YEI with subcontracting opportunities . . . sufficient to maintain an overall subcontract value equal to 12% of the total estimated cost of the projected contract funded value identified at award." (*Id.* ¶ 10.) YEI "fully performed its obligations under the Subcontract." (*Id.* ¶ 28.) However, SCLS "fail[ed] to pay YEI the full amount due . . . as shown in Attachment 1 to the Subcontract." (*Id.* ¶ 29.) Instead, SCLS sought to reduce YEI's compensation by applying the costs of the NRO contract, which is supposedly unrelated to the Subcontract or Prime Contract. (*Id.* ¶¶ 13, 29.) As a result, YEI suffered damages. (*Id.* ¶¶ 14, 30.)

These allegations contain sufficient factual content to support the reasonable inference that SCLS is liable for breach of contract. *See Iqbal*, 556 U.S. 662, 678 (2009) (noting that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") Therefore, contrary to SCLS's assertion, the Court finds that YEI has satisfied the minimum pleading requirements.

The remainder of SCLS's arguments require contractual interpretation or the determination of questions of fact—neither of which is an appropriate ground for dismissal. *See MTM Television Distribution Grp., Ltd. v. Pub. Interest Corp.*, No. 91-1519-

CIV-T 17C, 1992 WL 80625, at *1 (M.D. Fla. Mar. 24, 1992) (explaining that "[q]uestions of fact are not properly determined on a 12(b)(6) motion to dismiss); *see also Moran v. Crystal Beach Capital, LLC*, No. 8:10–cv–1037–T–30AEP, 2011 WL 17637, at *4 (M.D. Fla. Jan.4, 2011) (explaining that "[a] court may not engage in contract interpretation at the motion to dismiss stage")). Thus, SCLS's motion to dismiss YEI's breach of contract claim is due to be denied.

## II.     Breach of Implied Duty of Good Faith and Fair Dealing

Under Virginia law, to state a claim for breach of an implied covenant of good faith and fair dealing, a plaintiff must sufficiently allege: (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citing *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 251 Va. 28 (1996)). A party can breach its duty of good faith and fair dealing by: (1) acting dishonestly during the performance of a contract; or (2) exercising its discretion arbitrarily or unfairly. *See Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp. 2d 460, 466 (E.D. Va. 2013).

Here, YEI claims that after it entered into the Subcontract it repeatedly notified SCLS of its shortfall in revenue, fees, and G&A. (Doc. 11 ¶¶ 6, 32.) Although SCLS had discretion to assign YEI sufficient labor and CFM to meet the requirements of the Opportunities Provision, it failed or refused to do so. (*Id.* ¶¶ 32, 33.) Instead, SCLS apparently "reduced YEI's portion of the work" and "deprived YEI from obtaining the benefits for which it had bargained." (*Id.* ¶¶ 34, 35.) In addition, SCLS allegedly sought to reduce the shortfall of revenue owed to YEI by applying the value of YEI's services under the NRO Contract. (*Id.* ¶ 37.) Consequently, YEI argues that SCLS acted in bad faith and

breached its implied duty of good faith and fair dealing.

SCLS argues that the claim should be dismissed because it "had a contractual right to provide opportunities, and likewise not to provide opportunities" to YEI, (Doc. 15, p. 14); therefore, "there can be no breach of an implied covenant of good faith and fair dealing under Virginia law," (*id.*). In support of its position, SCLS relies on a well-established Virginia rule that "'when parties to a contract create valid and *binding rights*, an implied covenant of good faith and fair dealing is inapplicable to those rights.'" *Land & Marine Remediation, Inc. v. BASF Corp.,* No. 2:11-cv-239, 2012 WL 2415552, at *11 (E.D. Va. June 26, 2012) (quoting *Ward's Equip., Inc. v. New Holland N. Am.,* 254 Va. 379 (1997)*.*

SCLS's reliance on *Land & Marine Remediation, Inc.* is misplaced. The Virginia rule only applies to conduct that a defendant "is explicitly authorized to undertake by the contract." *Enomoto*, 624 F.Supp.2d. at 450. As a corollary, the rule "is only applicable if a plaintiff . . . is seeking redress through an implied covenant merely to curtail a defendant's unfavorable exercise of its explicit contractual rights." *Goodrich Corp. v. BaySys Techs.*, LLC, 873 F. Supp. 2d 736, 742 (E.D. Va. 2012).

Despite SCLS's arguments to the contrary, the Amended Complaint lacks any allegation that SCLS had an explicit contractual right <u>not</u> to provide YEI with sufficient subcontracting opportunities to maintain at least 12% of the estimated contract value. Likewise, no provision of the Subcontract states that SCLS could refuse to provide YEI with sufficient subcontracting opportunities. Rather, the allegations and language of the Subcontract itself supply at least a reasonable inference that SCLS was obligated to provide CFM sufficient to maintain an overall subcontract value equal to 12% of the total

estimated cost. Furthermore, YEI's claim for breach of an implied duty of good faith and fair dealing does not curtail any express contractual right held by SCLS. Instead, YEI's claim bears only on SCLS's discretion to assign YEI sufficient subcontracting opportunities and SCLS's unreasonable refusal to do so. For these reasons, the Court rejects SCLS's first argument.

SCLS also argues that Count II should be dismissed because YEI has failed to sufficiently allege that SCLS breached its implied duty by acting dishonestly or in bad faith. (Doc. 15, pp. 14–15.) SCLS is correct to note YEI's failure to allege dishonest conduct. However, YEI has adequately alleged facts supporting SCLS's bad faith.

YEI claims that it informed SCLS of the nature and extent of the shortfall in its revenue, fees, and G&A on numerous occasions. (Doc. 11, ¶ 32.) Despite notice of YEIs' shortfall, SCLS: (1) ignored the requirements of the Subcontract; (2) "continuously reduced YEI's portion of the work; (3) failed or refused to assign YEI additional labor or CFM to maintain the revenue required under the Subcontract; and (4) ultimately sought to reduce YEI's shortfall by the value of YEI's services under the NRO Contract. (*Id.* ¶¶ 13, 22–23, 34–37.)

These allegations, taken as true, are sufficient to demonstrate that SCLS's alleged actions were not only unfavorable, but were also taken in bad faith. *See Enomoto,* 624 F.Supp.2d. at 450–51 (finding that the defendant's actions were dishonest where the plaintiff alleged that "[d]efendant purposefully failed to provide him with a space flight and purposely failed to inform him of the high likelihood of medical disqualification until after he had paid three or four payments that [d]efendant submits are non-refundable.") (citations omitted). Accordingly, the Court finds that SCLS's second argument lacks merit.

Finally, SCLS moves to dismiss Count II on grounds that YEI failed "to plead in the alternative" although "there are inconsistent factual allegations in the Complaint, rendering Count II . . . insufficient to state a claim for relief." (Doc. 15, p. 15.) In support of its argument, SCLS directs the Court's attention to YEI allegations supporting YEI's claim for breach of contract, which purportedly conflict with those allegations supporting the claim for breach of an implied duty. (*Id.*) Finding no inconsistency that warrants the dismissal of Count II, the Court rejects SCLS's final argument.

In sum, the Court finds SCLS's arguments lack merit, and that YEI's claim for breach of implied duty of good faith and fair dealing is properly pled. As such, SCLS's motion to dismiss Count II is due to be denied.

## III.   Declaratory Judgment

YEI seeks declaratory relief and requests that the Court make a determination as to: (1) "whether or not the NRO Contract is a separate and distinct agreement; and (2) whether the revenue and compensation due to YEI from the NRO Contract are separate from the requirements of the Subcontract, or whether the revenue and compensation due to YEI from the NRO Contract are creditable to SCLS's obligations to YEI under the Subcontract. (Doc. 11, ¶¶ 39–44.) SCLS contends that the claim for declaratory judgment should be dismissed because it essentially duplicates the claim for breach of contract and serves no useful purpose in this action. (Doc. 15, pp. 16–17.) The Court agrees.

The Declaratory Judgment Act gives district courts the discretion to "declare the rights and other legal relations of any interested party seeking a declaration." 28 U.S.C. § 2201(a); *Public Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty

10

to do so. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). The party seeking declaratory judgment must demonstrate that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted). The declaratory judgment must serve some "useful purpose." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir.1996); *Allstate Ins. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992); *Emp'rs Liab. Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971);[2] *Cont'l Cas. Co. v. McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 342 (9th Cir. 1966).

In this case, identical conduct underlies YEI's claims for breach of contract and declaratory judgment. In support of its claim for breach of contract, YEI asserts that SCLS breached the Subcontract "by failing to pay YEI the full amount due" under the Subcontract and has "sought to reduce the amount of the shortfall by applying the total value of the NRO Contract … to meet [its] Subcontract obligations." (Doc. 11, ¶¶ 1–25, 27–30). Likewise, in support of its claim for declaratory relief, YEI alleges that SCLS: (1) "has refused to comply with its contractual obligations to pay YEI the amounts due to it under the Subcontract"; and (2) "has taken the position that its obligations under the Subcontract can be discharged, at least in part, by its performance under the NRO Contract." (*Id.* ¶¶ 1–25, 40–43.)

Based on these duplicative allegations, the Court finds that the request for declaratory judgment serves no useful purpose. The issues joined will, of necessity, be

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 & 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

resolved in the course of the litigation of the other claims. Therefore, YEI's claim for declaratory judgment is due to be dismissed.

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss (Doc. 15) is **GRANTED IN PART AND DENIED IN PART**.

    a. The Motion to Dismiss is **GRANTED** to the extent that Plaintiff's claim for declaratory judgment—Count III of the Amended Complaint (Doc. 11)—is **DISMISSED**.

    b. The Motion to Dismiss is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 4, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record